UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-CV 01274 | Date | 2/10/20 |
|---|---|---|---|
| Title | *MILDA RODRIGUEZ VASQUEZ et al v. CHAD F. WOLF, et al* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | | N/A |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| N/A | | N/A |

**Proceedings:** ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION [2] AND DENYING APPLICATION FOR STAY [6]

Petitioners ("Petitioners"), Milda Rodriguez Vasquez ("Vasquez") on behalf of herself and her minor child, M.S.M.R ("Child"), bring this motion for a temporary restraining order ("TRO") and application for stay of administrative proceedings against Chad F. Wolf, in his purported capacity as the acting Secretary of Homeland Security; and William P. Barr, in his official capacity as the Attorney General of the United States ("Respondents"). For the reasons explained below, the motions are DENIED.

I. **Factual Background**

Petitioners were previously detained by ICE in May of 2019. Petitioners missed a scheduled court hearing on November 4, 2019, and final deportation was ordered. In December of 2019, the Child suffered a head injury after falling from a shopping cart while out with Vasquez, his mother. Vasquez sought medical treatment for the Child at Olive View Hospital, where he was quickly referred to UCLA Medical Center. After examination at UCLA Child was released after overnight observations, and UCLA doctors recommended a four-week follow-up for further evaluation.

In late January of 2020, Petitioners were taken into ICE custody to begin deportation proceedings. Vasquez alerted ICE personnel to the Child's condition, but no immediate action was taken. Petitioners were taken by plane to the ICE facility in Dilley, Texas. Respondents maintain the Child received a full medical evaluation at that time, where he exhibited no abnormalities. Dkt. 8 at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-CV 01274 | Date | 2/10/20 |
|---|---|---|---|
| Title | MILDA RODRIGUEZ VASQUEZ et al v. CHAD F. WOLF, et al | | |

On February 4, 2020, the Child was taken for evaluation at Children's Hospital of San Antonio, he was examined by Resident physician Max McColloster ("Dr. McColloster") supervised by Dr. Daniella Vidaurri ("Dr. Viduaurri"). Dr. McColloster ordered an MRI, which was reviewed by the attending neurologist and did not reveal any abnormalities. *Id.* The Child was released from the Children's Hospital, and ICE prepared to continue deportation proceedings.

  II. **Procedural Background**

  Petitioners filed a writ of habeas corpus with this Court on Friday, February 7, 2020 to enjoin deportation proceedings. The next day, Saturday February 8, 2020, Petitioners moved for a TRO to stop further transport of Petitioners on an emergency medical basis, provide the Child alternative detention accommodations, and provide immediate access to a pediatric neurologist and neurosurgeon. Dkt. 4. Petitioners included declarations from Dr. Amy Cohen ("Dr. Cohen"), a child psychiatrist, and the Child's medical records from UCLA. Dkt. 2-2, Exh. 2–5. Petitioners subsequently filed a motion to stay administrative proceedings until the TRO could be heard by this Court. Dkt. 6. Respondents filed an opposition on Sunday, February 9, 2020. Dkt. 8. In their opposition, Respondents included declarations from Dr. Alicia Mills ("Dr. Mills"), a medical doctor contracted by ICE to evaluate detainees. Dkt. 8-2, and the Child's medical records from Children's Hospital of San Antonio. Dkt. 8-2. This Court noticed a hearing on the pending motions for Monday February 10, 2020 at 10 a.m. In advance of the hearing, Petitioners further filed the declaration of Dr. Christopher Giza ("Dr. Giza"), a specialist in traumatic brain injuries at UCLA- Mattel Children's Hospital. Dkt. 10. The Court fully considered the parties' pleadings and heard oral argument at the allotted time. At oral argument, the parties did not significantly alter or supplement the arguments in their pleadings. Because the Court fully considered the parties' briefs and arguments before the hearing, Petitioners' application to stay administrative proceedings in DENIED as moot. *See* Dkt. 6.

  III. **Analysis**

  The gravamen of Petitioners' argument is that continued deportation of the Child would constitute a failure to provide adequate medical care on behalf of the Respondents in violation of both the settlement reached in *Flores v. Reno*, No. 85-4544 (C.D. Cal. Aug. 12, 1996) ("*Flores* Settlement") and the Due Process clause of the Constitution.

  A plaintiff seeking a TRO must establish the same elements as those seeking a preliminary

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-CV 01274 | Date | 2/10/20 |
|---|---|---|---|
| Title | MILDA RODRIGUEZ VASQUEZ et al v. CHAD F. WOLF, et al | | |

injunction:[1] (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to plaintiffs in the absence of preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Under the Ninth Circuit's "sliding scale" approach, a plaintiff may be entitled to a preliminary injunction if "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). However, "plaintiffs must also satisfy the other *Winter* factors," including the likelihood of irreparable harm. *Id.* at 1135. Because injunctive relief is an "extraordinary remedy," it may only be awarded "upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. It is granted to serve the "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing." *Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local. No. 70*, 415 U.S. 423, 439 (1974).

### 1. Likelihood of Success of the Merits

Petitioners assert they will likely be able to prove the Child's Due Process rights will be violated by deportation to Guatemala. Petitioners claims the process of deportation will (1) deprive the Child adequate medical care as required under the *Flores* settlement, (2) that their conduct violates both procedural and substantive Due Process under the Fifth Amendment, and (3) that Respondent's conduct is arbitrary and capricious under the Administrative Procedures Act ("APA"). Dkt. 2 at 7-11. Momentarily setting aside a variety of procedural objections raised by Respondents,[2] the Court concludes that Petitioners have not adequately established a likelihood of success on the merits of any these claims. The record shows Respondents have provided the Child with adequate medical care based on the circumstances.

Even if we consider Petitioners' challenge to be proper under the *Flores* settlement, Petitioners are not likely to succeed on their claims of inadequate medical care because Respondents are only required to provide: "appropriate routine and emergency medical services to all children in immigration

---

[1] In the Ninth Circuit, the analysis for a TRO or preliminary injunction are "substantially identical . . . ." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 (9th Cir. 2001).

[2] This Court cannot set aside Respondent's jurisdictional objections, which assert that this Court has no jurisdiction to hear this case because it is covered by the REAL ID Act. 8 U.S.C. § 1252. However, the Court concludes that because this motion does not constitute a "direct challenge to an order of removal," the Court retains jurisdiction over the alleged Constitutional, APA, and *Flores* settlement violations alleged here. *See Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007).

                                                                                                        :

Initials of Preparer     PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-CV 01274 | Date | 2/10/20 |
|---|---|---|---|
| Title | MILDA RODRIGUEZ VASQUEZ et al v. CHAD F. WOLF, et al | | |

custody." Dkt. 2 at 10. Respondents have submitted a medical report by the doctor who treated the Child at the Children's Hospital of San Antonio, and the declaration of Dr. Mills responsible for treatment at the ICE camp in Dilley, Texas. Dkt. 2-2 at 1-4, 42-55. Although they are not pediatric neurologist, both Dr. Mills and Dr. McColloster performed thorough medical evaluations to determine if the Child needed further emergency medical treatment, and both concluded that he did not. In fact, none of Petitioner's experts make assertions to the contrary. At most, Petitioners' declarants establish the Child should be reevaluated by an expert as soon as possible. There is no clear indication that any additional emergency medical treatment is required in the United States.

Petitioners' Due Process claims are similarly unavailing. To violate Petitioners' substantive Due Process rights, the government must have engaged in conduct that "shock[ed] the conscience . . . ." *George v. Edholm*, 752 F.3d 1206, 1217 (9th Cir. 2014) (quoting *Rochin v. California*, 342 U.S. 165 (1952)). Cases that shock the conscience involve extreme governmental intrusion into a person's rights. *See Rochin v. California*, 342 U.S. 165 (1952) (forced vomiting to retrieve evidence shocked the conscience); *Edholm*, 752 F.3d at 1217 (government forced anoscopy and bowel evacuation was extreme invasion of dignitary, privacy, and bodily integrity interests); *Gonzalez-Rivera v. I.N.S.*, 22 F.3d 1441, 1449 (9th Cir. 1994) (immigration stop based solely on race was egregious constitutional violation). Here, Respondents have provided treatment from two separate doctors, neither of whom believe the Child required further emergency care. Following these evaluations, Respondents intend to proceed with their ordinary deportation procedure. This cannot be said to "shock the conscience" under the relevant precedent. Further, there is no dispute that Petitioners have fully engaged with the immigration removal process, preventing further review of the removal process except on extremely narrow grounds not raised here. *See* 8 U.S.C. § 1252(e); *Thuraissigiam v. U.S. Dep't of Homeland Sec.*, 917 F.3d 1097, 1119 (9th Cir. 2019). A procedural Due Process claim would necessarily require this Court to inquire into that process and is therefore precluded by 8 U.S.C. § 1252(g).

Finally, the actions of Respondents here, based on the evidence the Court has considered, does not suggest that Respondent's current plan of action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (E). Even assuming that the planned deportation of Petitioners would constitute a "final agency action" subject to judicial review by this Court, 5 U.S.C. § 704, the evidence before this Court suggests that the Child was given medical care that while not precisely analogous to that ordered by doctors at UCLA, was sufficient to make the decision to execute the deportation order neither arbitrary nor capricious. On this basis the Court concludes that Petitioners have not established a likelihood of

|  |  : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-CV 01274 | Date | 2/10/20 |
|---|---|---|---|
| Title | *MILDA RODRIGUEZ VASQUEZ et al v. CHAD F. WOLF, et al* | | |

success on the merits.

   **2. Irreparable Harm**

   Petitioners have failed to show they will suffer irreparable harm from Respondents enforcement of the deportation order. This is not to understate the potential seriousness of the Child's injury—certainly a fall which causes a traumatic brain injury deserves adequate medical treatment—but the harm from the fall has already been incurred and cannot in any way be attributed to Respondents' past or future actions. By the time of the hearing, the Child had been evaluated in-person by at least three different medical doctors: in the emergency room at ULCA, upon arrival at Dilley by Dr. Mills, and at the Children's Hospital of San Antonio. Petitioners have failed to show that the Child requires further treatment in the United States. Of the five total doctors that have review the Child's injury (both in person and through medical records[3]), only Dr. Cohen, a child psychiatrist reviewing the Child's records, directly contraindicates flight—but she is only able to do so from her area of expertise as a psychiatrist. Dkt. 2-2 at Exh. 3. The Child has already taken a roughly equivalent flight from California to Texas, but Dr. Cohen is the only physician who has indicated a potential negative consequence to the Child. The remaining four doctors do not assert that the deportation flight from Texas to Guatemala poses an immediate risk to the Child's health or safety due to his medical condition.

   As pediatric neurologist with a specialty in traumatic brain injuries, Dr. Giza would seem to be most qualified describe the necessary precautions for this type of injury— but Dr. Giza did not explain how *deportation* would further injure the Child—just that, if untreated, the Child may suffer long-term neurological problems from the *injury*. From examination of the Child's medical records, Dr. Giza recounts the Child's medical history and opines on the risks of untreated traumatic brain injuries in children, recommending timely expert follow-up. Dkt. 10-2. Dr. Giza's declaration, however, only recommends "expert consultation and evaluation with a pediatric TBI specialist as soon as possible." Dkt. 10 at 6. It does not contraindicate flight, travel, or sleeping in a bunkbed. The last line of Dr. Giza's declaration states "[r]eturning to Guatemala or remaining in detention at this time, with an incomplete assessment and inadequate treatment, would likely directly lead to an adversely altered life trajectory for this unfortunate child." Dkt. 10 at 6. The problems Dr. Giza flags are developmental, affecting the Child's "life trajectory." *Id.* These issues are not clearly linked to the deportation as opposed to the

---

[3] Examined via records from Dr. Cohen and Dr. Giza, and in person by Dr. Martes Gomez at ULCA, by Dr. Mills at ICE, and at Children's Hospital San Antonino by Dr. McColloster attended by Dr. Viduarri.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-CV 01274 | Date | 2/10/20 |
|---|---|---|---|
| Title | MILDA RODRIGUEZ VASQUEZ et al v. CHAD F. WOLF, et al | | |

initial injury. Respondents do not have an obligation to continue Petitioners' medical care indefinitely—the question is whether the deportation will irreparably harm the Child. The final comment does not address any of the issues that form the basis for this emergency motion: 1) preventing Petitioners from boarding the plane to Guatemala, 2) assigning the Child an alternative sleeping arrangement, or 3) notifying Petitioner's counsel 72 hours in advance of any movement. Dkt. 2 at 1. The final aspect of Petitioners' motion, granting Petitioners immediate access to a pediatric neurologist and neurosurgeon, does not rise to level of irreparable harm, as Petitioners will be released from custody following deportation. Under the circumstances here, Respondent's responsibilities do not extend to Petitioners' long-term neurological care. Without a clear showing of irreparable harm, the second *Winter* factor also tips in favor of Respondents.

### 3. Balance of Equities

In issuing a preliminary injunction, "the district court must balance the harms to both sides before issuing an injunction . . . ." *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017). In this case, Petitioners have failed to show that they will suffer significant harm from the removal. Again, this is not to dispute the potentially seriousness of the Child's injuries, but Petitioners have failed to show that any harm the Child suffers will result from the deportation as opposed to the injury. On the other side, Respondents will be harm by a continued injunction of their enforcement of immigration law. Balancing the equities, the Court cannot conclude Petitioners will suffer a greater harm than Respondents.

### 4. Public Interest

"Finally, the court must 'pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *VidAngel, Inc.*, 869 F.3d at 867 (citing *Winter*, 555 U.S. at 24). The Court concludes that Respondents have a strong interest in enforcing immigration laws. Every physician who has physically examined the Child has not contraindicated removal. The Court cannot reasonably arrest the immigration process based on the second-hand evaluation of an expert neurosurgeon and a child psychiatrist. As such, the public interest is better served by the continued enforcement United States immigration law.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-CV 01274 | Date | 2/10/20 |
|---|---|---|---|
| Title | *MILDA RODRIGUEZ VASQUEZ et al v. CHAD F. WOLF, et al* | | |

IV. **Conclusion**

Here, Plaintiff fails to make an adequate showing of both the likelihood of success on the merits, and the likelihood of irreparable harm in the absence of immediate injunctive relief. Plaintiff has not made a "clear showing" that she is entitled to immediate injunctive relief, because she has not established either of the elements discussed above. For the above reasons, Plaintiff cannot meet the elements necessary for this Court to grant a preliminary injunction and the Court DENIES Plaintiff's motion.

:

Initials of Preparer

PMC